FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 1 9 2025

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CARLOS MATURIN,**
Plaintiff,
v.                                           Case No. 1:25-cv-00444-MIS-JHR

**GOVERNOR MICHELLE LUJAN GRISHAM,** in her official capacity,
**MAYOR TIM KELLER,** in his official capacity
**CHIEF HAROLD MEDINA,** in his official capacity,
**BRIGADIER GENERAL MIGUEL AGUILAR,** Adjutant General of the New Mexico National Guard, in his official capacity,
**CITY OF ALBUQUERQUE,** a municipal government entity,
Defendants.

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S AMENDED VERIFIED COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

### I. INTRODUCTION

1. Pursuant to this Court's inherent authority to consider relevant supplemental legal materials that directly bear on the operative facts and constitutional injuries pled in the Amended Verified Complaint, Plaintiff CARLOS MATURIN submits this **Notice of Supplemental Authority including** to spotlight **irreconcilable contradictions and constitutional infirmities** in **(Exhibit A)** Executive Order titled *"Deploying the National Guard to Support Community Stabilization"* signed by Mayor Tim Keller on **July 21, 2025** (hereinafter "Keller Order").

2. This document is now being submitted into the judicial record as a **clarifying supplement** under *Fed. R. Civ. P. 15(d)* and the Court's discretionary review powers under *Iqbal, Twombly*, and *Nasious*, to underscore the **ongoing and evolving constitutional violations** materially relevant to Plaintiff's Amended claims.

3. This Order, cloaked in non-military euphemisms, constitutes **smoking-gun evidence** of procedural evasion, Fourth Amendment violations, and Fourteenth Amendment

1

contradictions. It operates as a retroactive attempt to legitimize a **militarized deployment without legal authorization**, and its publication post-litigation makes it directly material to this action. Judicial notice is requested under **Fed. R. Evid. 201(b)(2).**

## II. MONUMENTAL CONTRADICTIONS IN MAYOR KELLER'S ORDER

4. The Keller Order—while cloaked in public safety language—**exposes internal fractures, legal contradictions, and self-invalidating logic** on the following critical dimensions:

### A. Dual Sovereignty Confusion: "Local Deployment" But "State Operation"

5. *"The New Mexico National Guard will support the City of Albuquerque through a limited deployment along the Central Corridor, under the direction of the Governor, but operating in coordination with the Albuquerque Police Department."*

**Contradiction:**

6. Mayor Keller attempts to have it both ways—**asserting state command authority while relying on local coordination for law enforcement operations.** This creates an **unconstitutional dual-command ambiguity** that violates the **due process and notice requirements of the Fourteenth Amendment** and defies the principles of separation of powers and accountability (*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)).

### B. Asserting "Civilian Support" While Conducting Military Surveillance

7. *"National Guard personnel will conduct stationary and mobile visual presence patrols in marked and unmarked vehicles, including drone-based observation."*

**Contradiction:**

8. Keller classifies the mission as **"civilian support,"** yet simultaneously authorizes **military surveillance drones** and unmarked vehicle patrols—**actions that**

**blur or outright violate the Fourth Amendment's protections against warrantless searches, militarized surveillance, and unreasonable government intrusions.**

**Clarity:**

9. *Carpenter v. United States*, 585 U.S. ___ (2018) establishes the need for warrants for digital and persistent surveillance, which drone-based observation without individualized suspicion grossly defies.

## C. Simultaneously Denying and Affirming Arrest Powers

10. *"National Guard members will not conduct arrests, but will observe and communicate with law enforcement."*

**Contradiction:**

11. The use of language like **"observe and communicate"** without limitations **permits de facto command influence and functional law enforcement participation**. If guardsmen identify, pursue, or detain suspects—**even without executing a formal arrest—this circumvents the Fourth Amendment's prohibition on military policing** (*see Posse Comitatus Act doctrine* and *Laird v. Tatum*, 408 U.S. 1 (1972)).

## D. Simultaneously Invoking "Public Input" While Rejecting Community Engagement

12. *"Public feedback and neighborhood input were considered."*

**Contradiction:**

13. No public comment period was held, no City Council resolution authorized the deployment, and no neighborhood association was cited or documented. This false invocation of "feedback" constitutes **misrepresentation**, creating a façade of public legitimacy while excluding procedural due process—again violating *Mathews v. Eldridge*, 424 U.S. 319 (1976).

## E. Contradicting City and State Constitutional Limits

3

14. The Mayor's Order invokes a nebulous **"safety emergency"**, lacking any legal trigger under the **City of Albuquerque Charter, New Mexico Constitution**, or statutory law. There's no City Council resolution, no demonstrated crime escalation, no activation of **Article V emergency powers**, and no rooted **Home Rule** authority. This creates a **structural void**, excising any foundation of lawful executive action.

15. This naked act of unilateral authority—liberated from democratically accountable legislative process and veiled in ambiguous emergency rhetoric—runs **headlong into Supreme Court doctrine**. In *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), **Justice O'Connor** declared that *"a state of war is not a blank check for the President,"* and **warned that "emergency powers must not evade judicial review."** The Court held that even wartime detentions involving U.S. citizens require **meaningful judicial oversight and due process protections**.

16. Furthermore, under **Youngstown Sheet & Tube Co. v. Sawyer**, 343 U.S. 579 (1952), executive actions must rest on either **explicit congressional authorization or constitutional authority**. Here, the Mayor's Order lacks both. It thus occupies the **"lowest ebb"** of executive power under Justice Jackson's tripartite Youngstown framework—placing it in a position of presumptive invalidity.

17. *Therefore*, No emergency justification, however styled, can override the judiciary's duty to review or dispel unelected executive actions cloaked in vague urgency.

### III. CORE CONTRADICTION — PUBLIC CLAIMS vs. EXECUTIVE ACTIONS

18. **A. Keller's Public Denial (April 9, 2025):** "There's not going to be anyone with weapons… not going to be anyone in fatigues… not going to be any military vehicles. What this is, is essentially helping as public service aides."

19. **B. Keller's Executive Order (July 21, 2025):** Authorizes drone-based surveillance,

unmarked patrol vehicles, and "visual presence patrols" by military-trained personnel.

20. **Constitutional Implosion**: This contradiction is not rhetorical—**it is legally disqualifying**. You cannot claim "no militarization" while activating drone patrols and "visual presence" backed by National Guard support. This violates **Iqbal plausibility** standards by reinforcing the very "hybridized" enforcement structure Plaintiff pleads as unconstitutional.

21. **deduction**: A government cannot erase previous constitutional injuries by issuing semantic revisions.

## IV. STRUCTURAL INFIRMITY — FORM WITHOUT FOUNDATIONAL AUTHORITY

22. The Keller Order lacks:
    - Any **City Council resolution**;
    - Citation to **Albuquerque's emergency powers charter**;
    - Invocation of **state-level Article V emergency authority**;
    - Any **statutory or municipal code** enabling domestic Guard integration in local enforcement roles.

23. **Legal Significance:** Without a legislatively conferred power base, **the Order is administratively hollow**—a proclamation substituting for process. It attempts to **recharacterize illegal action** (military deployment) into an acceptable "public partnership" by **changing the label, not the law**.

24. **flaw:** You cannot stabilize constitutional violations with bureaucratic phrasing alone. The Court must assess legality based on function, not optics.

## V. SEMANTIC CAMOUFLAGE — MILITARY UNDER CIVILIAN MASK

25. The Order asserts National Guard troops will perform:

- "Surveillance support"
- "Visual deterrence"
- "Community engagement patrols"
- "Transport of arrestees and observation coordination"

26. But **nowhere** does it:
    - Identify **POST certification** compliance;
    - Limit **detention authority**;
    - Define **chain-of-command** clarity;
    - Ensure **Fourth Amendment compliance** for surveillance technologies.

27. *Optical Insight*: This is not retraction. It is **military repackaging**—a semantic deception to obfuscate unconstitutional enforcement operations. It corroborates Plaintiff's allegations that government officials have:
    - Engaged in surveillance without warrants (Carpenter v. United States);
    - Authorized Guard use in enforcement-adjacent roles, triggering Posse Comitatus concerns;
    - Done so without democratic consent or judicial review.

## VI. EXECUTIVE TIME LOOP — RETROACTIVE REWRITE WITHOUT ACCOUNTABILITY

28. **The Order fails to:**
    - Address prior public statements made April 6–11, 2025;
    - Clarify **timeline inconsistencies** regarding the initial Guard deployment;
    - Acknowledge **racial or geographic selectivity** of the Central Corridor focus;
    - Explain the **absence of judicial authorization** for drone surveillance or visual patrolling.

29. **Contradiction:** Time and causality in governance matter. This Order pretends **earlier unlawful acts never occurred**, ignoring the core principle that **subsequent paperwork cannot undo prior constitutional violations.**

30. 

| Claimed in Order | Proven Contradiction |
|---|---|
| "Public service, not military" | Public and press confirmed drones, uniforms, Guard-trained patrols |
| "No law enforcement authority used" | Guardsmen involved in detainee transport, perimeter control, and surveillance |
| "Community stabilization" | Undefined role—no state or municipal law supports military-civilian hybrids |
| "Emergency aid for safety" | No declaration of riot, disaster, or legally sufficient emergency |
| "Public input was considered" | No public meeting, council vote, or notice of comment period held |

31. This matrix functions as a **constitutional autopsy**—dissecting the hollow legality of the Order and proving Plaintiff's case with real-time factual convergence.

## VII. LEGAL UPGRADE TO PLAUSIBILITY AND INJUNCTIVE MERIT

32. These contradictions **substantiate the plausibility** of Plaintiff's allegations that the National Guard deployment lacks legal authorization, violates clearly established constitutional rights, and operates under a **pretext of coordination while functionally acting as unconstitutional domestic military enforcement**.

33. Plaintiff's Amended Verified Complaint is **fortified** by the Keller Order as follows:
    - **Fourteenth Amendment**: The procedural due process failures are confirmed by the Order's unilateralism—no public vote, no judicial oversight, and no

emergency prerequisites satisfied.

- **Fourth Amendment**: Drone deployment, visual patrols, and unmarked vehicles operated by military personnel establish **warrantless surveillance under color of civilian pretext**.

- **Relief Reinvigoration**: The ongoing and evolving nature of the Order—issued after this litigation commenced—validates the request for injunctive relief and declaratory judgment to prevent continued executive circumvention.

## VIII. CONCLUSION — CALL FOR JUDICIAL NOTICE AND ADJUDICATIVE ACTION

34. **WHEREFORE**, Plaintiff **Carlos Maturin** respectfully requests that this Court:

- Take **judicial notice** of the Executive Order signed by Mayor Tim Keller on July 21, 2025, under **Fed. R. Evid. 201(b)(2)**;

- Accept this filing as a **supplemental factual submission** under **Fed. R. Civ. P. 15(d)** and in compliance with **Iqbal**, **Twombly**, and **Nasious** plausibility standards;

- Recognize the Order as **direct corroboration** of Plaintiff's Fourth and Fourteenth Amendment claims;

- Permit this evidence to weigh in favor of **discovery, evidentiary hearings, and adjudication on the merits** without dismissal.

- **Injunctive relief claims and declaratory judgment** are revitalized given the ongoing threat, confusion, and civic disruption created by these ambiguous legal frameworks.

Respectfully submitted,

Carlos Maturin
439 62nd St NW
Albuquerque, NM 87105-1409
Email: carlosmaturin84@gmail.com

Phone: (505-930-3495)
*Pro Se Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2025, a true and correct copy of the foregoing Plaintiff's Notice of Supplemental Authority in Support of Plaintiff's Amended Complaint was served via CM/ECF on Counsel for Defendants and all parties.

/s/ *Carlos Maturin*
*Pro Se Plaintiff*




# City of Albuquerque

*Office of the Mayor Timothy M. Keller*

EXHIBIT A

# Strengthening the City of Albuquerque's Commitment to Defending Our Immigrant-Friendly City Through Inclusive Protection of Immigrant and Refugee Populations

Albuquerque has long stood as a city of refuge and resilience, rooted in values of justice, compassion, and community. We recognize the humanity of all Albuquerque residents, whether their citizenship status is immigrant, asylum seeker, refugee, U.S.-born, or naturalized; they have built and contributed to a city defined by diversity, strength, and shared purpose. In the face of federal actions and proposals that undermine human rights and respect, sow fear, destabilize families, damage our economy, and upend collaborative partnerships, the City of Albuquerque reaffirms its moral and legal duty to uphold civil rights, promote public safety, and serve all residents with dignity.

This executive order affirms the City of Albuquerque's unwavering commitment to protecting civil rights, promoting transparent governance, and ensuring public safety in response to the impacts of federal legislation like H.R. 1, the "One Big Beautiful Bill Act," signed into law by the 119th Congress on July 4, 2025, and many other dangerous federal actions. We implore our New Mexico congressional delegation and Congress, as a body, to support the Visible Act of 2025, which would strengthen oversight, transparency, and accountability for the Trump Administration's indiscriminate and alarming immigration enforcement tactics that have terrorized communities across the nation. Federal action is needed to restrain and regulate the behavior of federal agencies.

This executive order focuses on what can be done by the City to mitigate harms and shore up safeguards for immigrant and refugee communities by rejecting exploitative private contracts, safeguarding due process, and prioritizing the needs of working families and vulnerable children.

**WHEREAS**, the City of Albuquerque is an officially recognized immigrant-friendly city (R-18-7), committed to upholding the dignity, safety, and legal protections of all residents regardless of immigration status and enhancing the public safety, economic development, business opportunity, and civil rights for all members of our community.

**WHEREAS**, immigrants have long been foundational to the cultural richness of Albuquerque, contributing to its unique blend of traditions, languages, cuisines, music, and art.

**WHEREAS**, one in eight New Mexico workers is an immigrant, making up a vital part of the state's labor force across key industries, many of which are currently experiencing work shortages; and

**WHEREAS,** immigrants have a significant impact on our economy, having contributed more than $1.5 billion in taxes and spending more than $5.6 billion in consumer goods in 2023. More than 15,559 immigrants contribute to the entrepreneurial landscape and future economic vitality of Albuquerque and the state, and 16% of Albuquerque small businesses are immigrant-owned.

**WHEREAS,** the City affirms that due process and equal protection under the law are foundational constitutional principles that must be safeguarded for all individuals within the City's jurisdiction; and

**WHEREAS,** recent federal legislation signed by President Donald Trump expands civil immigration enforcement and detention practices that undermine community trust and harm vulnerable populations; and

**WHEREAS,** Immigration and Customs Enforcement (ICE) initiated enhanced immigration operations within the City of Albuquerque, and these operations have heightened fears within the community.

**WHEREAS,** our society entrusts law enforcement with significant authority, including the powers to detain, arrest, carry firearms, and use force; and

**WHEREAS,** conducting law enforcement activities in uniform signals professionalism and service to the public, and prevents the opportunity for rogue or bad actors to defraud and potentially injure community members; and

**WHEREAS,** there have been numerous community complaints of individuals impersonating law enforcement to defraud or injure vulnerable populations; and

**WHEREAS,** impersonating law enforcement officers erodes public confidence in our justice system, makes it more difficult for genuine government officials to maintain law and order, and creates fear and distrust in communities; and

**WHEREAS,** immigrant-friendly policies help to improve public safety by ensuring that our most vulnerable — victims of domestic violence, sexual assault, and other victims of crime — can report crime, seek safety, and serve as witnesses in the prosecution of a crime without fear that it will lead to family separation.

**WHEREAS,** the City supports transparent and accountable governance, including the routine public disclosure of immigration enforcement activities that may impact local residents and the economic vitality of our community.

**WHEREAS,** keeping families together and children protected and safe is a fundamental value for the City of Albuquerque; and

**WHEREAS,** the safety and well-being of children, including unaccompanied migrant minors, must be a top priority in all public policies and practices.

**WHEREAS**, the City recognizes that the economic security of working families must be prioritized, particularly when federal actions are destabilizing essential programs and services.

**WHEREAS,** immigrant friendly policies are conducive to public safety, economic development, and growth, and are vital to keeping families together.

**WHEREAS,** the City plays a critical role in providing services to support residents and their needs.

**Therefore I, Timothy M. Keller, Mayor of the City of Albuquerque, do hereby order, direct and affirm the following:**

PROTECTION OF IMMIGRATION DUE PROCESS

1. The City of Albuquerque remains committed to the principles set forth in C/S R-18-7, which affirmed Albuquerque's status as an immigrant-friendly city. In accordance with that resolution, City agencies, departments, officers, employees, or agents shall not use City resources, including but not limited to moneys, equipment, personnel, or City facilities to assist in or otherwise facilitate the enforcement of federal civil immigration laws, including participation in civil immigration raids, detentions, or information-sharing efforts, except where required by federal law or court order.

IMPLEMENTATION AND OVERSIGHT

2. The Office of Equity and Inclusion (OEI) shall lead the implementation of this Executive Order.

3. The Office of Immigrant and Refugee Affairs (OIRA) Steering Committee, established in 2021, will solicit feedback from the community, immigration rights organizations, service providers, business owners, health care providers, educators, domestic violence advocates, faith leaders, and other community partners on federal immigration actions and the City's response, identify ways that the City can protect the rights of immigrants, and collaborate with local nonprofits, legal service providers, and schools to ensure access to legal representation, counseling, and safe shelter options.

4. The Office of Equity and Inclusion (OEI) shall continue to disseminate *Know Your Rights* information, shall identify additional opportunities to educate the community and, in coordination with other City of Albuquerque departments, shall share information on City services and assistance programs for families impacted by federal enforcement actions.

5. All departments shall designate a liaison to coordinate compliance, training, and reporting. OEI shall provide regular progress reports to the mayor and/or his designee.

TRANSPARENCY IN CITY OF ALBUQUERQUE SERVICES

6. City departments shall not support secret policing tactics by ICE agents.

7. When encountering ICE agents at City facilities, City employees shall follow any guidance issued by the City Attorney's Office, including all previous guidance from the memorandum issued to all City employees on February 10, 2025.

8. City departments shall review their existing programs and services to identify additional ways to support families that have been impacted by federal immigration enforcement actions.

9. City departments shall report any ICE activity on City properties or facilities to the Mayor's Office, the City Attorney's Office, and the OIRA Steering Committee.

10. The Albuquerque Police Department (APD) cannot legally interfere with ICE activity, but upon request from a member of the community who has observed activity at a specific location, APD will assist in confirming whether federal agents are engaged in immigration enforcement activity.

11. The City will exhaust all available avenues to prosecute to the highest degree allowable those who defraud the public and commit crimes in our community through impersonation of law enforcement.

TRANSPARENCY IN IMMIGRATION ENFORCEMENT

12. As a law enforcement agency, ICE and its employees should demonstrate professional behavior that is beyond reproach and representative of the special public trust they hold. Its employees should demonstrate behavior that promotes the highest levels of integrity and professionalism, which should include clear communication and clear and consistent identification as ICE agents. eCFR :: 8 CFR 287.8 -- Standards for enforcement activities.

13. ICE must not disrupt the safety or well-being of City public spaces through violent or harmful detainment actions.

14. The City Attorney's Office shall file and maintain regular Freedom of Information Act (FOIA) requests with the United States Department of Homeland Security and ICE regarding immigration enforcement activities within or affecting the City of Albuquerque and disseminate relevant information to the Mayor's Office, OIRA Steering Committee, and any relevant City department.

PROTECTION OF CHILDREN, INCLUDING MIGRANT YOUTH

15. Led by the City's Child Wellbeing Impact Officer, in collaboration with OEI, all City departments serving children and youth shall develop trauma-informed protocols to

assist minors impacted by immigration enforcement, including unaccompanied and separated children.

## SUPPORT FOR WORKING FAMILIES

16. The City shall direct relevant departments to identify and support families disproportionately affected by immigration enforcement, particularly in areas such as housing, healthcare, employment, and education.

17. The City will expand virtual access to services and provide support as needed to facilitate secure interactions with other government agencies.

I recognize the enforcement of federal immigration law is under the sole purview of the federal government. As such, I strongly encourage our New Mexico congressional delegation to support and join with the congressional co-sponsors of the Visible Act of 2025, which would strengthen oversight, transparency, and accountability for the Trump Administration's indiscriminate and alarming immigration enforcement tactics that have terrorized communities across the nation.

Nothing in this executive order shall be interpreted as requiring any City officer or employee to violate federal or state law or a valid court order. If any section, clause, or provision of this order is found to be invalid or unenforceable, the remainder shall continue in full force and effect.

Inquiries regarding this executive order should be directed to the Office of Equity and Inclusion at (505) 768-3491.

SIGNED ON THIS 21 DAY OF July, 2025

TIMOTHY M. KELLER

MAYOR OF ALBUQUERQUE